Good afternoon, Your Honors. May it please the Court. My name is Estelyn Marquis, and I'm appearing on behalf of Mr. Rod Travion Woods, applicant in this case. The case against Mr. Woods, as you heard, rested on two foundational pillars, and that was Mr. Foreman's identification of Mr. Woods as the shooter, and the testimony of T-Mobile cellular service representative Melanie Caldwell, which essentially placed Mr. Woods, as we were discussing, Mr. Woods near the scene of the shooting, mere minutes after the shooting occurred. I'd like to focus... Well, it placed his phone there. That's right. It placed his phone there, but it was extremely damaging to his alibi because, and as later Mr. Woods did admit, there would be no reason for his friend, Mr. Smith, who he testified had the phone, to check Mr. Woods' voicemail because the testimony of Ms. Caldwell was that the cell phone was actually checked from the handset itself. Mr. Woods' voicemail was checked from the handset itself. And Mr. Woods testified Mr. Smith would have no reason to do that. We now know that this testimony was incorrect. T-Mobile's own subpoena compliance specialist, Joseph Sierra, has confirmed that that testimony was not correct and that the crucial call record, in fact, represented a missed call that was then forwarded to voicemail, which would be consistent with Mr. Woods' alibi. This factual predicate, T-Mobile's confirmation that that phone record was not testified to correctly at trial by its representative, forms the factual basis for the first claim of Mr. Woods, second or successive, his proposed petition.  Mr. Woods has made a prima facie case of a constitutional violation here, that the false testimony violated his right to due process and that he can meet the gatekeeping provisions. We know that Ms. Caldwell's testimony was crucial at trial because the sole piece of evidence that the jury requested during its day-and-a-half deliberation was Ms. Caldwell's, a readback of Ms. Caldwell's testimony. So Mr. Woods has made out a prima facie constitutional violation because it's fair to say there's a reasonable probability that the trial may have turned out differently had Ms. Caldwell not testified falsely as to the significance of the 7.34 p.m. call. Second, Mr. Woods can make out a prima facie showing of diligence, and diligence under this court's jurisprudence has a couple of components. There's the question of whether a factual predicate, in this case T-Mobile's confirmation that that testimony was incorrect from Ms. Caldwell, whether it was not known or reasonably discoverable at the time, and that's Gage v. Chappell. So why wasn't it reasonably discoverable? Yeah, the reason it wasn't reasonably discoverable, Your Honor, has to do with a couple of things, and it's not just Mr. Woods' indigent or incarcerated status, although I don't think that's irrelevant, but it's not the main point. The main point is that Mr. Woods had no reason to think that T-Mobile would confirm that its testimony, that the testimony by one of its representatives at his trial was false. And there's no indication in this Court's jurisprudence that an — But he thought it was false. He absolutely did think it was false and has maintained it was false. He's on inquiry notice, at least, at the trial. That's right. So another way to think about it, as the Court presented in Solorio v. Muniz, inquiry notice and whether reasonable steps were taken to conduct an investigation. And I think we're really thinking about the second piece here, what would have been reasonably expected of Mr. Woods. And we would submit that it is not reasonable to expect an individual to periodically pester, go back to witnesses, and ask them whether they've changed their mind, absent an indication that T-Mobile would have done so. And then I would just add on top of that — But this — can I just circle back on that? Absolutely. Because your briefing did indicate that — I think that was framed as false testimony or testimony that the witness didn't stand behind. And my reading of the record is what she said was, I'm out of the business. You know, I don't do this anymore, and referred to the present — people who presently hold those jobs.  And Ms. Caldwell's — that's correct, Your Honor. Ms. Caldwell's email is a little unclear. She says on the one hand that she stands behind her testimony, but also recognizes that it conflicts with Mr. Sierra, the current T-Mobile subpoena compliance specialist, read of the call. And so it's a little unclear. I would argue, Your Honor, that the main point is that Ms. Caldwell doesn't have to recant or officially accept that that testimony was false. The important factual predicate here is that T-Mobile itself has confirmed that its representative did not testify correctly as to the significance of the call record. And so given that fact, the question is whether it would have been reasonable for Mr. Woods to anticipate this, to pursue this, and we would submit that he did not have an indication that T-Mobile would have corrected its testimony. What about the 913 call, telephone call? Yeah. You know, my co-counsel was speaking to that. I would echo some of what she said, which is just that Mr. Woods was very clear that his estimates, his timing estimates, were just that. His one estimate that he gave was that he was thinking maybe it took him about 15 minutes to get to the off-ramp. But then, again, his girlfriend was also texting him at the time why it was taking so long. But I think he also testified that he made that call and he made it from Ontario, didn't he? Thank you, Your Honor. He did not. He did not testify to that effect. And that is in the record transcript at 428 to 429. And this is an important point. The prosecution, it appears, assumed that he had said that he made that 913 call to his father while he was in Ontario. He did not testify to that. Instead, the prosecution at RT 428 asks, you know, do you see a particular call record? That's your father's number, correct? He says yes. And then they talk about the call duration. And then the question from the prosecution is, see the call after that. And then after that says, call started on July 3rd at 10.15 and 9 seconds and ended at 9.14.  Obviously, if a call starts after 10 o'clock, it can't then end before that at 9 o'clock. But putting that aside. That's pretty clear. I think that's pretty clear one way or the other. We're not time traveling. But then it asks, you know, you made the call, correct? He says yes. Then on RT 430, the question is, and you made those calls right, that call. And Mr. Woods clarifies which call, the one to my father? He says yes. And he says yes, I remember calling my father. But he did not testify that he called his father in Ontario. And later when he was asked, I don't have the exact words in front of me, but later when he was asked by the prosecution, you know, you made a call to your father in Rancho Cucamonga. How do you explain, you know, the cell towers going off in Alhambra? And he was then prevented from answering that question because it required him to access knowledge that he wouldn't have as a non-expert. That objection was made. So we never actually got a chance for him to clarify where exactly he was when he made the call to his father. But he did not testify that he made a call to his father in Ontario at 9.13. And so stepping back a little bit from this particular factual situation, at this stage, and I see I'm almost out of time. I'll just finish my sentence. At this stage, this Court is required to determine whether Mr. Woods has made a prima facie showing. And the ultimate significance, or we would argue insignificance, of this 9.13 call is really best left to the province of the District Court when it creates a more intense, it could create a more intense factual record or get into the thornier issues of how important or unimportant this call is when it examines the claims to determine whether, in fact, Mr. Woods has met his burden, his prima facie burden. Thank you. Thank you. May I proceed? Yes. Nathan Gutman for respondent, and may it please the Court. If I could start by just correcting two things that were completely incorrect about what was just said. The first one was setting up a straw man argument about the significance of the cell phone testimony. Counsel just said that the testimony from the prosecution's cell phone expert placed Petitioner near the scene mere minutes after the shooting. It did not. There were a few relevant points of the cell phone evidence, but the cell phone evidence was not part of the prosecution's affirmative proof of where Petitioner was at the time of shooting. I think I interjected that it placed the phone near the time of shooting at 735, and she agreed. Right. What are we missing? There was no location evidence for the 735 call.  That voicemail. I think that's what was just established. Right. So it did not place the phone anywhere. The function of the cell phone evidence was essentially anticipatory rebuttal. It was penning in Petitioner's alibi before he gave it, and so any disputes about the correctness of the prosecution's cell phone testimony don't undermine the prosecution's affirmative proof of guilt. They would at best remove something that was inconsistent with Petitioner's alibi, and I think that's important to clarify. The other point that I would like to correct is that when counsel was reading the exchange about the Ontario phone call, first, the prosecutor did not shift between calls he was talking about. He said, see the call after that, corrected himself. When column after that says call started on July 3rd at 10.15 and goes on to say the time, he's talking about the same call. He's talking about the next column over. And in response, or immediately after that, when he asked Petitioner, you made that call correct, Petitioner did not say which call. He said yes. So I don't know where counsel's getting the idea that Petitioner asked which call, but it's not in the transcript. More broadly, I think, if I understand correctly, Petitioner's idea of diligence is that the showing has been satisfied if the petitioner didn't know what the investigation, didn't already know before doing the investigation what the investigation would prove. That just eviscerates what diligence is. The whole point of this showing is if a petitioner is on notice that something needs to be investigated, which I think Petitioner's counsel here has conceded, at least about the cell phone issue, because this was something that was disputed at trial, did the petitioner diligently follow up on that? And there have not even been any allegations about what Petitioner did between the time he was arrested and the time he filed his federal petition in 2013 to follow up on any of that. And I would point out that he had retained counsel, who was able to obtain an expert about a different issue for his California Supreme Court petition, which was pending until the day before the federal petition was filed. Counsel hasn't tried to address what Petitioner was doing to follow up on the cell issue during that time whatsoever. And clearly Petitioner was able to follow up on whatever issues he wanted then because he had retained counsel, who we know was able to obtain an expert for Petitioner. Can you shed any light on why the Superior Court judge did not allow the three alibi witnesses to testify at the exhaustion hearing? I think the court found that those were not newly discovered under the state standard, which is true. These were all the people that Petitioner himself testified that he was with when he testified about his alibi at trial. But isn't it correct that the Superior Court's order, what's concerning to me is the Superior Court's order said that the court at least was under the impression that those three witnesses had testified at trial, and they had not. Do you know if that was called to the Superior Court's attention? I don't know. And to be honest, I was surprised to hear that. But I wasn't quite looking into that because this isn't a D-1 review. This is a diligence and factual innocence review, and I don't think that that's relevant to diligence before the federal petition was filed, which is the relevant time, whether he was able to call those witnesses to testify years and years after the federal petition was filed. He was able to get declarations from these people after the federal petition was filed. That's what we're talking about when we're talking about investigating and discovering these claims. He has not made any allegations about what prevented him from doing that before the federal petition was filed. I think that's crucial here. That's the right time frame. There are zero allegations about any of these claims, about what was done to investigate before the federal petition was filed when he had retained counsel. The odd thing about the cell phone evidence is that normally when we're talking about diligence, you've got suspicion that something is amiss and that some investigation won't show it. But here, there's a good argument that the petitioner had no idea that there might be contrary evidence at T-Mobile that would refute what was said at trial. So it's just the suspicion and without, I mean, looking at this record, I think there's a fair argument to make. He didn't have any idea that there would be other evidence out there as to the cell phone. Do you disagree with that? I mean, he believed it. I mean, accepting his argument, he believed it was false. The testimony was, well, this is what the evidence showed, and I don't see any other indication that he would have known that there were other tests available that would show that the testimony was inaccurate. So it's kind of a technological argument in a sense. Well, I would agree with just factually the Court's first point, but I would disagree that there was any advance in technology that was alleged. The 2019 cell reports didn't mention any advance in technology from what I understand. It was just saying we're also familiar with T-Mobile's record-keeping system, and we know what this number in this particular record means, which is exactly the same thing that was being disputed at trial. But the inquiry notice and diligence standard, it doesn't require that petitioner have previously seen what he later discovered. Oh, I understand that, yeah. Of course. So we have no idea whether somebody at T-Mobile might have said something different between trial and 2013 because petitioners made no allegations about that whatsoever because he hasn't made any allegations of even trying to look into something that was known and actually disputed at trial, and his trial expert reached the same conclusion as his 2019 experts. There's nothing new here, no new technology, no new conclusion, and I want to be clear that the 2019 cell reports don't do anything to undermine the location information that was most fatal to petitioner's alibi. If it did, we would have seen that claim here. My question was a little unartful. I guess I was driving at when is he put on inquiry notice. Your position is the trial put him on inquiry notice, and I think his position is I didn't know that this evidence could have existed, and therefore I wasn't on inquiry notice. I think that's a fair dispute. I think he did know that it was worth following up on what T-Mobile actually had to say about what this record meant because he literally did that at trial. The way this played out was during a break in testimony, the T-Mobile employee who was the prosecution's cell expert, she talked to defense counsel about what this exact record entry meant. She called back to T-Mobile where she worked, and after the break testified to the jury that she had checked and her interpretation was correct. That's pretty persuasive, isn't it? Persuasive about her. Well, like he would think, you know, a reasonable person might think, well, you know, somebody from T-Mobile testified to how it worked, and, you know, they were there, so why should I, you know, looks like there's nothing I can do. No, I might think it's wrong. I don't know what was preventing. Petitioner hasn't said that anything prevented him from following up with the exact people in the exact routes he followed. Except counsel, except he did, right? You've just explained that he not only asked the T-Mobile representative, but that she called higher-ups. What else is he supposed to do? Petitioner, if petitioner believed that he had no reason to follow up on this before, what changed between then and now? He had the exact same reason to follow up on it in 2019 as he did before, and that was his suspicion, and his old attorneys could have done exactly the same thing as his current attorneys did. He didn't say that anything changed between then and now. He always wanted to follow up on it because he always thought it was wrong. I'm out of two questions. Okay, thank you. We'll hear a rebuttal. Counsel, I just want to say I find it very disturbing that the T-Mobile representative and her supervisors testified about the T-Mobile records one way at trial. I'm not casting aspersions that anybody testified falsely. I think that's a stretch. But it seems to me that what we've got now is a record where T-Mobile is saying that was incorrect testimony. And opposing counsel's right, you know, the standard for diligence is very, very high. So what did change? Yeah. Yeah. I agree with Your Honor that it is disturbing and that I think the confirming with the boss, so having two people from T-Mobile confirm this, what has now been confirmed to be incorrect testimony, does suggest that there would be little reason for follow-up from T-Mobile at least. Now, I will say that. But can I just finish? Oh, of course. Forgive me for interrupting, but when it came time to file the SOS, your client did follow up. That's right. And so I would point Your Honors to Exhibit 7, and that is a diligence declaration from one of the federal public defender attorneys that Mr. Woods had. That's the evidence we have about when the good faith basis to challenge this evidence and to reach out to T-Mobile, that's when it occurred to that team. That's the evidence that we have in the record. And in that declaration, that federal public defender says, we did not know about this good faith basis until we received trial counsel's files. And it took us a long time to get trial counsel's files because he was not receptive and not responsive despite multiple requests for that file. But your client thought it was wrong. I mean, going back to Judge Thomas's point, at the time of trial, your client thought it was wrong. Yeah. So why did he need access to his former attorney's file? What am I missing? Yeah. And we don't have too much information in the record about what changed. But what we do have, and I'm sorry, I see I'm out of time, but I will answer Your Honor's question. But what we do have is the attorney saying that the good faith basis for this claim became apparent after reviewing that trial counsel file. I agree that Mr. Woods has maintained that that call record was incorrectly represented by T-Mobile at trial, but he had no reason to think that the factual predicate for this claim, which is T-Mobile confirming that it was incorrect, it was false, that he had reason to think that he would be able to get that confirmation from them. So that's really, and I think just sort of practically stepping back, how often would he have had to pass it to T-Mobile to make that showing of diligence? I think there's good reason for him to believe he would have gotten the same answer. Judge Thomas, I have one more question. Is that all right? Go ahead. Of course. Counsel, I'm looking at ER 258, and a minute ago I asked you about the 913 call, and I think your client testified that he made the call from Ontario. Yeah. And you, I think you were, my first question is, did you want me to be looking at the transcript of 258? Because that's the only place I know to look. And that question there says, you made that call back in Ontario when you got your phone back, question mark, and the answer was yes. Is this the question, the answer you think could be read ambiguously, or what am I missing here? That, I think, could be ambiguous, because I don't believe that he testified that he, I could be wrong about that exact citation, Your Honor. But the citation I was referring to before does confirm what I said before, so that's Exhibit 21 at page 986, and it's lines 11 through 13, and that's where Petitioner Mr. Woods is confirming which call, the call to my father, indicating that he thought they were talking about two separate calls. In terms of the citation that Your Honor is referring to, that wasn't the one I was referencing before, so my apologies. Further questions? No, thank you. Thank you, counsel. Thank you all for your arguments this afternoon. The case has started to be submitted for decision, and we'll be in recess.
judges: THOMAS, PAEZ, CHRISTEN